**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DONALD H. STEWART III, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) |
| v. | )   **CIVIL ACTION** |
| | )   **NO. 4:12-40153-TSH** |
| | ) |
| THOMAS DICKHAUT, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

**July 10, 2017**

Hennessy, M.J.

Petitioner Donald H. Stewart III ("Stewart") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction.  (Docket #1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and an Order referring the petition to me, (Docket #35), I recommend that Stewart's petition be DENIED and DISMISSED.

I.      BACKGROUND

The facts underlying Stewart's conviction, recounted here, are set out in the opinion of the Massachusetts Supreme Judicial Court ("SJC").  See Commonwealth v. Stewart, 957 N.E.2d 712 (Mass. 2011).  The factual findings of the state court are presumed to be correct.  28 U.S.C. § 2254(e)(1); Scoggins v. Hall, 765 F.3d 53, 57 (1st Cir. 2014).

> The account of the victim's murder came from the defendant's statement to police and the testimony of two of the Commonwealth's witnesses, Mark Bergeron and Shannon Belsito.  At the time of the murder, Belsito was the girl friend [sic] of the defendant's accomplice, Frank Carpenter.

1

In May, 2003, the defendant and Carpenter lived with Bergeron in a "storage facility" in Worcester. In the early morning hours of May 5, the victim approached the defendant and Carpenter and asked to buy some drugs. The defendant patted the victim down and took a knife that the victim had in his possession. The victim stayed with the defendant, Carpenter, and Belsito while he smoked "crack" cocaine. At some point, there was a discussion concerning whether, in exchange for drugs, the victim would lend his truck to the defendant for a few hours. When the victim declined, the defendant and Carpenter went outside the facility where Carpenter said that the pair should just take the victim's truck. When the defendant stated that the victim could report it stolen, Carpenter responded that they should kill the victim. The defendant "went along with" this suggestion. The pair returned to the facility and asked the victim to go with them to buy some cigarettes; the victim left with them.

As the men were walking near some railroad tracks, the defendant and Carpenter attacked the victim by grabbing him around the neck, punching and kicking him. The defendant used the victim's knife to stab him and, when the victim was gasping for air, the defendant cut off the victim's belt and used it to strangle him. The victim stopped breathing; the pair then threw his body over a concrete wall, a drop of nine feet.

The pair went back to the facility, and into the bathroom together. They let Belsito in and she saw the defendant "covered in blood." He stated that he had killed the victim with his own knife by stabbing him fifty-one times, and related that he had jumped off a wall onto the victim's chest, cut his neck "so that it opened up bad," and kicked him in the neck while he was gasping for air. He stated that the victim's chest caved in with ribs coming out of his body and that the victim's eyeball came out of its socket.

The defendant asked Belsito to get him a bag and something to cover the victim's body. The pair put their bloody clothes as well as the victim's pants, belt, and sneakers into the bag. The defendant hid the victim's wallet in a ceiling panel at the facility.

The defendant and Carpenter left the facility to cover the victim's body with a sheet Belsito had given them and some plastic roofing material they had found. The pair returned and slept.

When they awoke, the defendant wanted Belsito and Carpenter to leave with him later that day to drive the victim's truck to Florida. As a ruse, Belsito asked the defendant to drive her to a hospital to see her father; Carpenter went with them. After leaving Belsito to visit her father, the defendant and Carpenter approached Bergeron, and asked him whether he knew where they could get rid of a stolen truck. Bergeron declined to help them. Carpenter then asked whether Bergeron would sell the truck; he declined.

In the early morning hours of May 6, the pair were arrested at an automobile dealership, charged with breaking and entering, and held in custody.  Later that evening, Belsito reported the murder to police, who recovered the victim's body, the bag, and the wallet.  The police interviewed Carpenter the next morning, and he told them where to find the knife.

Once they had the knife, the police then interviewed the defendant, who confessed and provided details of how the murder was committed.  He had the keys to the victim's truck in his possession.

At trial, the medical examiner testified that the victim's death was caused by stab wounds to his neck and blunt head and neck trauma.

The defendant did not testify.  He had admitted to police that he participated in the victim's killing but, through witnesses, including a forensic psychologist, cross-examination of the Commonwealth's witnesses, and argument, his defense was that he was so impaired by drug use, that he was not capable of forming the requisite intent to commit murder.  The defendant moved for required findings of not guilty at the close of the Commonwealth's case and at the close of all evidence. The judge denied the motions.

Stewart, 957 N.E.2d at 715-17 (footnotes omitted).[1]

II.   PROCEDURAL HISTORY

On October 20, 2008, after a jury trial in Worcester Superior Court, Stewart was convicted of murder in the first degree on three separate theories: felony-murder, deliberate premeditation, and extreme atrocity or cruelty.  Stewart, 957 N.E.2d at 715; Docket #34 at 4; Docket #1 at 2-3;

---

[1]  Before leaving this recitation of the evidence, Petitioner claims that the recitation contains "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   (Docket #31 at 22) (quoting 28 U.S.C. § 2254(d)(2)).  He refers to the statement in the second paragraph that the victim declined to give Petitioner the truck and Petitioner and Carpenter agreed to take the truck.  Petitioner argues that this statement conflicts with Petitioner's confession to the police in which Petitioner said that the victim had loaned Petitioner the truck and therefore that there was no robbery or forceful taking of the truck.  Id.  To the extent the SJC's recitation of the evidence is a finding of fact—a matter disputed by the Commonwealth, see Docket #34 at 34-36—under Section 2254(e)(1), a determination of a factual issue by the state court "shall be presumed to be correct . . . and [t]he applicant [for a writ of habeas corpus] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  See 28 U.S.C. § 2254(e)(1).  Petitioner has not met that burden.  Rather, as discussed below, in rejecting Petitioner's sufficiency of the evidence claim, the SJC identified evidence that would support a jury's decision to discredit the portion of Petitioner's confession that the victim had loaned Petitioner the truck, and hence that there was a forcible taking of the truck.  This discussion occurs in Part IV C below, addressing Petitioner's claim that evidence of the predicate armed robbery was insufficient.  Teti v. Bender, 507 F.3d 50, 59 (1st Cir. 2007) ("Describing how different parties stated different versions of events does not constitute the needed showing of clear and convincing evidence.").

Tr. 5-114.  Additionally, Stewart was convicted of armed robbery, which served as the predicate offense for felony-murder, and three counts of assault and battery with a dangerous weapon.  Id. Stewart was sentenced to life in prison.  (Docket #34 at 4; Docket #1 at 2).  Stewart appealed his conviction directly to the SJC.  Resp't's Suppl. Answer at 11.  On November 10, 2011, the SJC affirmed Stewart's conviction.  Stewart, 957 N.E.2d at 712.  Stewart filed a motion for reconsideration on December 19, 2011, which the SJC treated as a petition for rehearing and subsequently denied on February 13, 2012.  See Stewart v. Dickhaut, No. 12-40153-TSH, 2016 U.S. Dist. LEXIS 18494 (D. Mass. Feb. 16, 2016).

On November 13, 2012, Stewart filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "petition").  (Docket #1).  On January 31, 2013, Respondent Thomas Dickhaut filed a response to the petition.  (Docket #13).  On February 4, 2013, Respondent filed a supplemental answer, in five volumes, comprising relevant portions of the state record. (Docket #16).  Petitioner filed a Motion to Amend Petition for Writ of Habeas Corpus on April 17, 2015, which Respondent opposed.  (Docket #24, 25).  On February 16, 2016, Judge Hillman issued a memorandum and order denying Petitioner's Motion to Amend, principally reasoning that the new claims sought to be asserted were time-barred.  (Docket #27; see Stewart, 2016 U.S. Dist. LEXIS 18494).  On May 31, 2016, Petitioner, through counsel, filed a memorandum of law in support of the petition.  (Docket #31).

III.   STEWART'S HABEAS CORPUS PETITION AND STANDARD OF REVIEW

Proceeding with counsel, Stewart's petition asserts three grounds for relief:

**Ground One:** Violation of his Sixth Amendment right to effective assistance of counsel by reason of: (1) his lawyer's failure to object to the instruction given by the trial court, or to request a proper instruction on the defense of mental impairment; (2) his lawyer's erroneous argument that since the Petitioner was mentally impaired, he should be found not guilty; (3) his lawyer's failure to argue application of mental impairment to extreme atrocity and cruelty; and (4) his

lawyer's concession that the Petitioner bore some responsibility for the killing, without explaining how the jury should assess that responsibility, other than paradoxically, relieving him of it, thereby guaranteeing a guilty verdict for first degree murder.

**Ground Two:** Violation of his Due Process Clause rights pursuant to the Fifth and Fourteenth Amendments as there was insufficient evidence to support a conviction for armed robbery and first degree felony-murder because the victim lent his truck to the Petitioner and therefore, the evidence did not establish that an armed robbery occurred (armed robbery being the predicate offense to support the felony murder conviction) and the SJC erred when it determined that that taking of personal property from the victim after he was dead could serve as the predicate offense.

**Ground Three:** Violation of his Due Process Clause rights pursuant to the Fifth and Fourteenth Amendments when the SJC affirmed his convictions for armed robbery and first degree felony-murder on a theory of the case not presented to the jury. More specifically, in affirming the Petitioner's conviction, the SJC speculated that it was the victim's refusal to lend the truck that was the impetus for the homicide, a theory contrary to the Commonwealth's theory at trial, and unsupported by the record facts. The court also held that the taking of the victim's personal items was the impetus for the homicide contrary to the Commonwealth's trial theory and unsupported by the evidence.

(Docket #31 at 2).

To prevail on any one of these grounds for relief, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Stewart must show that the challenged state court adjudication was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that the decision 'was based on an unreasonable determination of the facts.'" Pena v. Dickhaut, 736 F.3d 600, 603 (1st Cir. 2013) (quoting 28 U.S.C. § 2254(d)).  This "highly deferential" standard of review "requires the petitioner to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  Id. (quoting Burt v. Titlow, 134 S. Ct. 10, 16 (2013)).   As discussed below, Petitioner fails to make this showing.

IV.     DISCUSSION

A.      Standard of Review of Adjudicated Ineffective Assistance Claim

Petitioner claims, as he did before the SJC, that trial counsel was constitutionally ineffective in four different ways.  (Docket #31 at 2).  As noted above, because these claims were adjudicated on the merits before the SJC, see Stewart, 2016 U.S. Dist. LEXIS 18494 at *3, Section 2254(d) permits habeas relief only if the SJC's decision was:

> (1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . .
>
> (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Of these two standards of habeas review, claims of ineffective assistance of counsel should be "reviewed under the 'unreasonable application' clause of § 2254(d)(1)" because they involve a mixed question of fact and law.  Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011).  Thus, it has been recognized that in the context of review of state-adjudicated claims of ineffective assistance of counsel, Section 2254(d)(2) "is of limited utility."  Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002).  Despite this, where Petitioner asserts that relief is appropriate under Section 2254(d)(2), it is addressed under that standard.[2]

Under Section 2254(d)(1), the phrase "clearly established Federal law" refers to Supreme Court precedent at the time of the state court decision.  Id., at 30.  A state court decision may be "reasonable," as referenced in both § 2254(d)(1) and (2), "even if the reviewing court 'concludes

---

[2]  Section 2254(d)(2) involves "an unreasonable determination of the facts."  When reviewing the factual findings of a state court pursuant to AEDPA, state court findings are "presumed to be correct" unless a petitioner can rebut the "presumption of correctness" by clear and convincing evidence.  Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011) (citing 28 U.S.C. § 2254(e)(1)).  This provision, however, applies only to determinations of "basic, primary, or historical facts."  Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).  As noted, an ineffective assistance of counsel claim is a mixed question of fact and law, Shuman, 636 F.3d at 31, and therefore § 2254(d)(2) "is of limited utility."  Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002).

6

in its independent judgment that the relevant state court decision applied clearly established federal law <u>erroneously or incorrectly</u>.'" <u>Shuman</u>, 636 F.3d at 30 (emphasis in original) (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).  In that light, "AEDPA imposes a 'highly deferential standard for evaluating state-court rulings.'" <u>Renico</u>, 559 U.S. at 773 (quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7 (1997)).  "'[U]nreasonable' means something greater than incorrect or erroneous." <u>Id.</u>

The clearly established federal law relevant here was articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Strickland</u> established a conjunctive, two-step framework for evaluating ineffective assistance of counsel claims.  <u>See</u> <u>Ouber</u>, 293 F.3d at 26 ("The <u>Strickland</u> principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA.").  According to that framework:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Strickland</u>, 466 U.S. at 687.

"But even this exacting demonstration is not enough in a habeas proceeding." <u>Shuman</u>, 636 F.3d at 31.  As the First Circuit explained "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable." <u>Id.</u> (internal quotation marks omitted) (alteration in original).  That inquiry, the First Circuit highlighted, "is different from asking whether defense counsel's performance fell below <u>Strickland's</u> standard." <u>Id.</u>  Put another way, "the question is not whether counsel's actions were reasonable," but rather "whether there is any

reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard."  <u>Shuman</u>, 636 F.3d at 31 (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 788 (2011)).[3]

In sum, applying the deferential <u>Strickland</u> standard in conjunction with the deferential § 2254 standard creates—to adopt the Court's characterization—a "doubly" deferential standard. See <u>Harrington</u>, 131 S. Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal citations and quotations omitted).

B.      Individual Claims of Ineffective Assistance of Counsel

Petitioner asserts that trial counsel was ineffective by: (1) failing to object to the trial court's jury instructions; (2) incorrectly arguing that because Petitioner was mentally impaired he should be found not guilty of all charges; (3) failing to argue the application of intoxication to the theory of extreme atrocity and cruelty; and (4) erroneously conceding that Petitioner bore some responsibility for the killing of the victim, without suggesting how the jury should assess that responsibility aside from an acquittal.  (Docket #31 at 2).

1.  Failing to object to jury instructions

Petitioner claims that counsel was constitutionally ineffective for failing to object to the instruction on mental impairment.  In Petitioner's view:

> the jury instructions on mental impairment were erroneous and legitimized an untenable theory of defense.  They were also self-contradictory.  One the one hand, they told the jury that "impairment due to drugs or mental health problems is not a defense to a crime in Massachusetts," while on the other hand, they instructed that if the "Commonwealth has not proved beyond a reasonable doubt that the defendant

---

[3]  The SJC did not rely expressly on <u>Strickland</u>, <u>see</u> <u>Stewart</u>, 957 N.E.2d at 724-25, but on the state analogue which is the "functional equivalent" of <u>Strickland</u>.  <u>See</u> <u>Jewett v. Brady</u>, 634 F.3d 67, 75 (1st Cir. 2011) ("Massachusetts applies a functional equivalent to the <u>Strickland</u> deficiency standard, which requires a serious failure by trial counsel, meaning a serious incompetency, inefficiency, or inattention that has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e.") (internal citations and quotations omitted).  Moreover, because Petitioner was convicted of first degree murder, the SJC reviewed Petitioner's conviction pursuant to Mass. Gen. Laws ch. 287, § 33E, which is "more favorable to the defendant than is the general constitutional standard for determining ineffective assistance of counsel."  <u>Stewart</u>, 957 N.E.2d at 725 (quoting <u>Comm. v. Frank</u>, 740 N.E.2d 629 (Mass. 2001)).

had the required intent to commit any one or more of the crimes charged in the
indictment [by reason of impairment due to drugs or mental health
problems] . . . . In that case, the defendant would be not guilty."

(Docket #31 at 9) (alterations in original); see also Docket #31 at 6-7 (instructions were "erroneous
and self-contradictory" because "impairment due to intoxication or other mental condition is not a
complete defense."). Petitioner argues that the instruction left the jury with the impression that if
they found Petitioner impaired, the jury could not find murder in the second degree or
manslaughter,[4] but only not guilty of murder in the first degree. Stewart, 957 N.E.2d at 722.
Armed with his own unilateral assessment of the faults in the instruction as a predicate, Petitioner
claims that counsel was ineffective for failing to object and suggest different language, and alleges
that the SJC's application of Strickland to this predicate was unreasonable. (Docket #31 at 10).
I recommend the District Court dismiss this argument principally for three reasons.

First, the SJC found no error in the jury instruction. See Stewart, 957 N.E.2d at 723. The
SJC began its review of the instruction by observing that a court does not "scrutinize[] bits and
pieces [of the instruction] removed from their context. We review the charge as a whole, looking
for what meaning a reasonable juror could put to the words of the trial judge." Stewart, 957 N.E.2d
at 719 (citations and quotation marks omitted) (alterations in original). Responding expressly to
the claim that the jury was left with the impression that impairment did not allow the jury to return
a verdict of a lesser included offense of murder in the first degree, the SJC noted:

> Before charging the jury on impairment, the trial court's charge on murder advised
> the jury that their verdict could be: not guilty, guilty of murder in the first degree
> by reason of deliberate premeditation or by extreme atrocity or cruelty, or by
> felony-murder; or murder in the second degree;

---

[4] Petitioner argues here that "without the option of manslaughter, counsel's concession that [Petitioner] did 'bear
some responsibility' for the killing could only have left the jury hopelessly confused . . . ." (Docket #31 at 11).
However, as the SJC highlighted, Petitioner did not raise this claim before the SJC. See Stewart, 957 N.E.2d at 722
n.11 ("The jury were not instructed on manslaughter; the defendant makes no claim of error.").

> The trial judge charged: "[U]nder our law, murder is the unlawful killing of a human being with malice.  Murder committed with deliberate premeditation and malice is murder in the first degree.  Murder committed with extreme atrocity or cruelty and with malice is also murder in the first degree.  Murder committed during the commission or attempted commission of a felony punishable by life imprisonment, such as armed robbery, is murder in the first degree.  Murder which does not appear to be murder in the first degree is murder in the second degree, and our law says that the degree of murder must be found by the jury."
>
> When the judge was reviewing the verdict forms with the jury, he stated that if the jury found that the Commonwealth had not proved that the defendant committed murder in the first degree on any of the three theories, they would then consider whether the Commonwealth proved murder in the second degree.

Id. at 722-24.  For purposes of habeas review, the SJC's determination of the law of Massachusetts is binding on this court, and this court is foreclosed from second-guessing the SJC's determination of what the law of Massachusetts is.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Ortiz v. Dubois, 19 F.3d 708, 713 n.5 (1st Cir. 1994) ("[T]he law of Massachusetts is what the SJC says it is.").

Second, having determined that the charge was proper, the SJC reasonably concluded that "defense counsel's failure to object to the mental impairment instruction was not ineffective assistance of counsel."  See Stewart, 957 N.E.2d at 723.  This conclusion is not only reasonable, it is inevitable and it is virtually unassailable since, as the Commonwealth argues, "there could be no deficient performance for, and no prejudice from, failing to object to a proper jury instruction." (Docket #34 at 15-16) (citing Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) (stating that habeas petitioner's "counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or nonexistent," based on evidentiary ruling ultimately rendered by state's highest court on appeal)); cf. Exilhomme v. Spencer, No. 08-10552-DPW, 2011 U.S. Dist. LEXIS 94790, at *18 (D. Mass. Aug. 24, 2011)

("The Appeals Court considered [petitioner's] ineffective assistance of counsel claims under this standard [and] conclud[ed] [] that, because the trial court's unobjected-to actions were not in error, counsel could not have been ineffective in failing to object to them.").  Under the deferential standard that applies here, the SJC's determination cannot be said to be lacking in justification.

Third and finally, even if there was an error in the jury instruction, a federal court may "entertain an application for a writ of habeas corpus . . . only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "Federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Thus, "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)).  In rare circumstances, an erroneous jury instruction can be a basis for habeas relief if it "infected the entire trial" such that the resulting conviction violates due process.  See Estelle, 502 U.S. at 72; Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'") (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)); Sanna v. DiPaolo, 265 F.3d 1, 11-12 (1st Cir. 2001) (because "a state law or practice that betrays a fundamental principle of justice offends the Due Process Clause[,] . . . a state court's error in applying a state rule sometimes can have constitutional implications" and thus "may afford a basis for federal habeas relief.").  However, Petitioner does not contend that the jury instruction

infected the entire trial and thereby violated his federal due process rights; rather, he argues that counsel was constitutionally ineffective for not objecting to the instruction as given.[5]

Accordingly, this component of Petitioner's Sixth Amendment claim is without merit.

### 2. All-or-nothing trial strategy

During summation, counsel highlighted evidence of Petitioner's impairment and its effect on his ability to form the requisite intent to commit the crimes charged.  See Stewart, 957 N.E.2d at 724-25.  Counsel concluded by urging the jury to "not find [Petitioner] guilty of this charge of murder."  Id.  The SJC described counsel's strategy as "all-or-nothing."  Id.  Petitioner argues counsel was ineffective in his appeal to the jury for acquittal.  He posits that because (in his view of the law) mental impairment could only achieve reducing murder from first degree to second degree, counsel was ineffective for asking for an outright acquittal, instead of a verdict on a lesser included offense.  Hearkening back to his claim of error in the instruction, Petitioner also asserts that counsel's summation "compounded" the "erroneous" jury charge, and counsel's failure to object to it.  (Docket #31 at 10).  Petitioner further argues that the SJC finding that mental impairment is a defense to both murder in the first degree and murder in the second degree is "faulty" and a post hoc justification of counsel's constitutional ineffectiveness.  (Docket #31 at 12-13).  Finally, Petitioner argues that to support this determination, the SJC made findings which were unreasonable in light of the evidence presented in the State court proceeding.  (See Docket #31 at 15).

At the outset, the First Circuit's observation in Ortiz, 19 F.3d at 713 n.5, bears repetition: "[T]he law of Massachusetts is what the SJC says it is."  Much of Petitioner's argument here depends on his disagreement with the SJC's determination of the substance of the law; to be blunt,

---

[5]  To the extent that Petitioner now alleges that the instruction violated his due process rights, such an argument is procedurally foreclosed.

such arguments have no merit.  Rather, because the SJC found that there was no error in the instruction, to paraphrase Petitioner, there was no "error[]" to "compound[]."  Similarly, far from being a "faulty premise," see Docket #31 at 13, "mental impairment is a defense to both murder in the first degree and murder in the second degree," Stewart 957 N.E.2d at 726, because the SJC, and the SJC panels that decided the cases cited in the Stewart decision, said so.

Stripped of rhetoric and personal opinion, Petitioner's argument then boils down to a claim that counsel was ineffective for adopting the all-or-nothing strategy, and counsel should have argued to the jury, consistent with the trial strategy of "mitigation" and not "acquittal," that the inability to form intent favored a verdict of murder in the second degree.  (Docket #31 at 13-16). The SJC reasonably rejected this claim.  It did so because the strategy was consistent with the law in Massachusetts and the charge as given.  See Stewart, 957 N.E.2d at 725.  The high court found no merit in the notion (espoused by Petitioner) that if the jury found Petitioner was impaired, the only alternative to murder in the first degree was murder in the second degree (and therefore that counsel was ineffective in failing to pursue a verdict on the lesser included offense by asking for an acquittal).  Id.   "Mental impairment," the SJC noted, "is a defense to both murder in the first degree and murder in the second degree."  Id. (citing cases).

The SJC also concluded that the all-or-nothing strategy "was not manifestly unreasonable because the [Petitioner] confessed to the killing and his defense was that he did not have the capacity to form the specific intent to commit the crimes charged."  Id. at 725.  This conclusion was the product of a reasonable application of Strickland.  As the SJC noted, counsel had to contend at trial with the fact that Petitioner confessed to the crime. Id.  Arguing from the record that Petitioner committed the act, but lacked the requisite specific intent, accounted for the confession and capitalized on expert testimony on Petitioner's impairment.  Similarly, the SJC

13

found that for counsel to argue for less than acquittal (and ask the jury to return a verdict of second degree murder) would have been "totally incompatible with his primary defense." Id. at 725-26 ("The defendant wanted an acquittal, not a conviction of a lesser-included crime.") (quoting Comm v. Roberts, 555 N.E.2d 588, 593 (Mass. 1990)).

In this regard, Petitioner asserts that the SJC's finding that Petitioner's "primary defense" was acquittal, as opposed to conviction of a lesser included offense, was an unreasonable determination of the facts in light of the evidence in the State court proceeding.  See Docket #31 at 15.  To the extent that the SJC made factual findings at all, Petitioner's argument is without merit.  In support of his attack on the SJC's identification of the primary defense (acquittal based on lack of intent), Petitioner cites to excerpts from counsel's opening and examination of the defense's expert. See  id. at 13-14.  Far from establishing that the primary defense was conviction of a lesser included offense, counsel's opening not only focused on intent, but in the same breath reminded the jury that the court would later instruct the jury on "the various degrees of these crimes." Id.  The better reading of this jury address is that counsel was not seeking, contrary to Petitioner's now self-serving claim, conviction of a lesser included offense.  The examination of the defense expert is, at best, applicable to both degrees of murder, since counsel asked the expert how impairment would impact Petitioner's "ability to contemplate, premeditate and be aware of his actions." Id. at 14.  I note also, as the SJC observed, that because there was no motion for a new trial based on ineffective assistance of counsel, there is nothing that would illuminate counsel's reasons for pursuing this strategy.  On this record, Petitioner's attack on the SJC's findings of fact, to the extent it made any, is meritless.

In sum, the SJC's application of Strickland to counsel's all-or-nothing strategy was reasonable.  It was grounded in the law on impairment, the charge as given at trial, and the evidence

of Petitioner's confession to committing the deadly assault with which counsel had to contend in defending this matter, and counsel's ability to exploit expert testimony.

### 3.   Failing to argue application to extreme atrocity and cruelty

The SJC also considered Petitioner's argument that his "counsel was ineffective because he should have discussed mental impairment as it related specifically to murder in the first degree based on premeditation or extreme atrocity or cruelty." Stewart, 957 N.E.2d at 725. The SJC summarily concluded that counsel's closing argument did not support a claim of ineffective assistance of counsel. Id. at 726.

In seeking habeas review Petitioner does not expound upon this argument and thus I do not address it at length here. As to the failure to argue mental impairment as it related specifically to murder in the first degree based on premeditation or extreme atrocity or cruelty, even assuming arguendo that Petitioner could surmount the high hurdle of showing that the state court determination was unreasonable, he would nonetheless be unable to show that he was prejudiced by such a determination. Pursuant to Strickland, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Petitioner here was convicted on all three theories of first-degree murder. Thus, even if the SJC unreasonably concluded that his counsel was not ineffective, Petitioner's claim still fails because he nonetheless would have been convicted of felony murder.[6] See infra.

---

[6] Petitioner also devotes a single sentence in his petition to the claim that counsel was constitutionally ineffective for failing to also address the effect of mental impairment on the intent to commit the underlying armed robbery which was the predicate for felony murder. (Docket #31 at 11). It is not clear that this argument was raised before the SJC. See Stewart, 957 N.E.2d at 725. Accordingly, beyond the SJC's finding that counsel's closing argument did not support ineffective assistance of counsel, there is no SJC determination to review. In this regard, the claim can be dismissed as not exhausted. However, even if I consider it here, I do note that the record suggests that Petitioner would not be able to show prejudice under Strickland. The SJC found there was evidence upon which a jury could

####    4.   Noting that Petitioner bore some responsibility

Petitioner contends that his conviction for murder in the first degree was "guaranteed" by his counsel's concession that Petitioner bore some responsibility for the killing.  (Docket #31 at 11).  In concluding that Petitioner's counsel was not ineffective, as discussed above, the SJC noted that "trial counsel's all-or-nothing strategy was not manifestly unreasonable because the defendant confessed to the killing and his defense was that he did not have the capacity to form the specific intent to commit the crimes charged."  Stewart, 957 N.E.2d at 725.

The judge instructed the jury on at least three separate occasions that second degree murder was one of the choices presented to the jury.  Stewart, 957 N.E.2d at 721 ("[T]he judge then stated, 'Murder which does not appear to be murder in the first degree is murder in the second degree.' He repeated this principle three more times, albeit using slightly different language.").  The SJC's determination was not unreasonable because counsel's "concession" of bearing some responsibility for the killing was entirely consistent with evidence already before the jury and paralleled counsel's trial strategy that Petitioner was not able to form the requisite intent to commit murder as a result of his drug use and polysubstance abuse.

For all the foregoing reasons, insofar as the petition asserts claims that trial counsel was constitutionally ineffective, I recommend that the District Court dismiss the petition.

---

have found that Petitioner was not so impaired as to negate his intent to commit murder in the first degree: the clarity of his thinking after the murder as shown by Petitioner's participation in concealing the body and destroying evidence, and hiding the victim's property, and Petitioner's ability to recount in his confession how the murder was committed. See Stewart, 957 N.E.2d at 723.  Given this evidence and the highly deferential standard that applies to habeas review, the SJC could have concluded that even if there was an error in counsel's failure to address the effect of impairment on the intent to commit the robbery, that Petitioner would be unable to establish prejudice.

C.     Insufficient Evidence Claim

Petitioner's second claim for relief asserts that his felony murder conviction is improper such that there was insufficient evidence to support his conviction for armed robbery—that is, the predicate offense underlying his felony murder conviction.

Assuming arguendo that evidence of armed robbery, the predicate for felony murder, were lacking, Petitioner would nevertheless be unable to establish that "he is in custody in violation of the Constitution or laws or treaties of the United States," see 28 U.S.C. 2254(a), because the jury convicted Petitioner on all three separate theories of first-degree murder: felony murder, deliberate premeditation, and extreme atrocity and cruelty.  Thus, Petitioner would still not satisfy § 2254(a) unless he also prevailed on his ineffective assistance of counsel claim because he would otherwise nonetheless properly be in custody based on his convictions on the theories of deliberate premeditation and extreme atrocity and cruelty.  Thus, based on my foregoing recommendation that the Court deny Petitioner's Strickland claim, I also recommend that the Court deny his second claim for relief because as a threshold matter Petitioner cannot show that he would be in custody "in violation of the Constitution or laws or treaties of the United States."

Petitioner's challenge to the sufficiency of the evidence is in any case without merit.  A habeas court reviews challenges to the sufficiency of the evidence pursuant to Jackson v. Virginia, 443 U.S. 307 (1979) and In re Winship, 397 U.S. 358 (1970).  Under the Jackson standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319.  The First Circuit has noted that "[i]n practice, Jackson challenges are rarely upheld on habeas . . . ."  Brown v. O'Brien, 666 F.3d 818, 824 (1st Cir. 2012).  The reason for this is because "[a] federal court reviewing a habeas petition raising a

Jackson claim must apply a "twice-deferential standard."[7]  Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) (quoting Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012)).

Under Massachusetts law, "[i]n order to make a case for felony-murder, the Commonwealth 'need only establish that the defendant committed a homicide while engaged in the commission of a felony.'"  Stewart, 957 N.E.2d at 717 (quoting Comm. v. Matchett, 436 N.E.2d 400 (1982)).  The predicate felony for Petitioner's felony-murder conviction was armed robbery.  Id.  Massachusetts General Laws ch. 265, § 17 defines armed robbery as follows: "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years . . . ."  As the SJC noted here, "[r]obbery is '[t]he taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal.'" Stewart, 957 N.E.2d at 717 (quoting Comm. v. Novicki, 87 N.E.2d 1, 3 (1949) (second alteration in original)).  Additionally, "'[i]t would be enough that the homicide[] occurred as part of the defendant's effort to escape responsibility for the underlying felony.'"  Stewart, 957 N.E.2d at 717 (quoting Comm. v. Ortiz, 560 N.E.2d 698 (1990)).

Here, Petitioner argues that the evidence of armed robbery was insufficient because, at least according to Petitioner's confession to police, the victim had loaned Petitioner the truck and therefore the evidence did not and could not show a taking of property against the will of the victim.  See Stewart, 957 N.E.2d at 717-18.  The SJC rejected Petitioner's sufficiency of the evidence argument because it concluded, with sound basis in the evidence, that the jury could have

---

[7] As the government highlights, although the SJC did not reference Jackson in its opinion, the Petitioner relied on the Jackson standard in his brief submitted to the SJC in support of his claim.  (Docket #34 at 30).  Thus, I conclude that the SJC adjudicated this claim on the merits pursuant to that standard and will apply the deferential AEDPA standard.

rejected the portion of Petitioner's confession that the victim had loaned Petitioner the truck.  Id.
The SJC noted:

> The jury reasonably could have concluded that the victim did not voluntarily give the defendant the keys or his truck, relying solely on the defendant's statement to police.  Given that the plan to steal the truck and kill the victim was so close in time to when the victim supposedly gave the defendant the keys, and the fact that the defendant did not use the truck until after the victim was killed, the jury reasonably could have concluded that the defendant was not being truthful about what transpired concerning the keys.  The jury reasonably could have found that it was the victim's refusal to lend the truck that caused the defendant and Carpenter to leave the victim inside the facility while they discussed stealing the truck.
>
> There also was other evidence from which the jury could have concluded that the truck was never lent to the defendant.  Bergeron testified that "they" asked him whether he knew where to get rid of a "stolen truck."  Even though on cross-examination Bergeron stated that it was Carpenter who asked the question, there is no evidence that the defendant contradicted Carpenter's characterization. Belsito testified on cross-examination that she heard the defendant and victim discussing the truck, but that she did not believe "anything was ever exchanged." Moreover, a forensic psychologist the defendant called as a witness testified that the defendant told him that he argued with the victim about the truck because the victim first said he would lend it and then changed his mind, and that during their walk he again argued with the victim.  The jury reasonably could have inferred that the second argument had been about the truck.

Stewart, 957 N.E.2d at 718.

Petitioner frames his argument in terms of § 2254(d)(2) and contends that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented."  (Docket #31 at 22).  To the extent that Petitioner's claim should not be immediately dismissed by operation of § 2254(a), I recommend that the Court conclude that the SJC did not make its decision based on an unreasonable determination of the facts.

Viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, Jackson, 443 U.S. at 319, there was a sufficient basis for the SJC's determination that the jury could have reasonably concluded that the truck was not "voluntarily given" to the Petitioner before the killing, (see Docket #31 at 21).  As the SJC detailed, there was evidence

presented at trial from which the jury could have rationally found that the Petitioner did not have possession of the truck before the killing. First, Shannon Belsito, one of the Commonwealth's witnesses, testified that she did not believe "anything was ever exchanged." Stewart, 957 N.E.2d at 718. Second, as the SJC further reasoned, the jury could have reasonably inferred that the truck was never lent to the Petitioner based on the temporal proximity between the killing and the taking of the truck and the fact that the Petitioner did not use the truck until after the killing had taken place. Id. Finally, the jury also heard testimony from a forensic psychologist who testified that "the defendant told him that he argued with the victim about the truck because the victim first said he would lend it and then changed his mind, and that during their walk he again argued with the victim." [8]

Although the jury's determination contravenes Petitioner's statement to the police, credibility determinations are within the province of the jury and other evidence in the record also forms a basis for the finding to the contrary; therefore, the SJC did not make its decision based on an unreasonable determination of the facts.

D.      Theory Presented to Jury

Petitioner's third claim for relief asserts that he was denied due process of law because, he contends, the SJC affirmed his conviction for armed robbery based on a theory not presented to the jury. (Docket #31 at 24). It is clearly established federal law that a criminal conviction cannot be affirmed "on the basis of a theory not presented to [a] jury." See Chiarella v. United States,

---

[8] Petitioner also claims that the SJC erroneously relied on this hearsay statement as substantive evidence, disregarding that it was offered "for the limited purpose of evaluating the credibility of the [defense expert's] opinion." (Docket #31 at 23). Even assuming this error, the other evidence recounted by the SJC was sufficient to allow a reasonable juror, viewing the evidence in the light most favorable to the prosecution, to discredit that portion of Petitioner's confession that the victim had loaned Petitioner his truck. Such credibility determinations are within the province of the jury. Rice v. Collins, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the [person's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.")

445 U.S. 222, 236 (1980) (citing Rewis v. United States, 401 U.S. 808, 814 (1971)).  I recommend that the Court reject this claim at the outset because it suffers from the same infirmity as his second claim for relief—that is, because this claim is applicable only to his conviction of felony-murder and not the two other independent bases for first degree murder, even if he is successful, Petitioner still cannot show that he is "in custody in violation of the Constitution or laws or treaties of the United States" pursuant to 28 U.S.C. § 2254(a).

Petitioner's argument nonetheless fails.  Petitioner contends that the SJC affirmed his conviction on the alternative basis that the object of the armed robbery included the victim's wallet and clothes because the court "perhaps recogniz[ed] the weakness of the evidence" regarding whether the victim loaned the Petitioner his truck.  (Docket #31 at 25).  Petitioner himself notes that "[i]n defining the theory on which the prosecution's case was built and presented to the jury, a reviewing court must look to the 'principal stages of the trial,' which include 'the prosecutor's summation and the judge's charge [as well as] the prosecutor's opening statement.'" (Docket #31 at 25) (quoting Cola v. Reardon, 787 F.2d 681, 693 (1st Cir. 1986)); see also Dunn v. United States, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.").

Contrary to Petitioner's contention, the judge's charge at trial unequivocally identified the victim's wallet and clothes as property that was the object of the armed robbery, stating:

> Now, as to this first element [of armed robbery], as to the property, the Commonwealth alleges the defendant stole property of [the victim] that consists of a wallet, clothing, and a vehicle.

Tr. 5 at 86.  Indeed, the indictment makes clear that the armed robbery charge was based on stealing the victim's "money, clothes, and car."  Resp't's Suppl. Answer at 93.  Finally, in the prosecutor's closing, the prosecutor stated that the Petitioner and Mr. Carpenter "stabbed [the victim].  They

beat [the victim].  They stripped [the victim] of some of his clothes.  They killed [the victim], take his clothes, take his wallet, and take his truck.  Consider that when you're considering the charge of felony murder."  Tr. 5 at 40.  Thus, I recommend that the Court conclude that Petitioner's due process rights were not violated because the SJC affirmed the Petitioner's conviction on a theory that was presented to the jury.

## VI.    CONCLUSION

For the foregoing reasons, I recommend that the Court DENY and DISMISS Stewart's petition, (Docket #1).[9]

<div style="margin-left:40%">

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

</div>

---

[9]  The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).